## KELLOGG SEXTON *versus* JOHN NEVERS.

If the purchaser at a sale on execution loses his title to the property in consequence of a neglect of the officer to comply with the requisitions of the law, he has a remedy by an action of the case against the officer.

In such a case the sheriff is answerable for the default of his deputy.

Where the plaintiff, being the grantee of an equity of redemption, for the purpose of strengthening his title, caused the equity of redemption to be sold on an execution which he held against his grantor, and bid it off himself for the amount of the execution, and took a deed of it from the officer, but paid the officer no money except his fees and expenses, and in consequence of a neglect on the part of the officer the sale proved to be ineffectual, but the plaintiff's title was valid independently of the sale, it was *held*, that the plaintiff might maintain an action on the case against the officer for his default, and that the measure of damages was, not the sum bid by the plaintiff at the sale, but the amount of the fees and expenses actually paid by him with interest from the time of payment.

THIS was an action of the case against the sheriff of the county of Franklin, for the default of D. Wright, his deputy. The declaration alleged, that three executions, dated March 25, 1833, against Merit Stetson, for sums amounting to $246·16, had been committed to the deputy for service ; that on May 25, 1833, he sold on these executions Stetson's right in equity to redeem certain land in Buckland, and that the plaintiff purchased the same, for $246·73 ; that the deputy neglected to post up notifications of the time and place of sale, in Buckland and two of the adjoining towns ; and that in consequence the plaintiff had lost all title to and benefit of the equity of redemption.

At the trial, before *Morton* J., it appeared that the plaintiff and Solomon Pitkin, partners under the firm of Sexton & Co., had claims against Stetson ; who, being in failing circumstances, on November 3, 1832, mortgaged to Sexton & Co. his interest in the land above mentioned.　The land was then subject to a previous mortgage to the Massachusetts Hospital Life Insurance Company, and was also under attachment upon three writs, upon which the executions above mentioned were subsequently issued. On March 21, 1833, Stetson executed a deed of quitclaim of the land to Sexton & Co.

On March 27, 1833, Sexton & Co. entered into an agreement with Lyman Wood to sell him this property ; and in consideration of this agreement and of the transfer of certain

personal property, Wood at the same time entered into an agreement with them to pay the amount due to them from Stetson, supposed to be about $850, and to give them a note for the amount when ascertained. On the next day, March 28th, Sexton and Pitkin executed a quitclaim deed of the land to Wood, caused it to be recorded, and subsequently delivered it to him. Prior to the transfer to Wood, and in pursuance of an agreement to that effect, Sexton & Co. had purchased the executions mentioned in the declaration, and after that conveyance they put them into the hands of the deputy sheriff, with directions to sell the equity of redemption, and at the sale Sexton bid off the same for the sums stated in the returns on the executions, amounting to $246·73, and took a deed thereof. The object of this sale was to be secured against other attachments, which possibly might have subsisted upon the estate of Stetson at the time of the conveyance to Sexton & Co. Wood was informed of the time, place and object of the sale, by a letter from Sexton & Co., and was present at the sale. No money was actually paid to the officer, except the fees stated in the returns.

On April 16, 1834, Wood gave his note to Sexton & Co. for the sum of $1295, which included the amount which Stetson owed Sexton & Co., and the amount paid to the judgment creditors for the three executions, and a balance of account of about $140 due to Sexton & Co. from Wood himself. On January 21, 1835, this note was put in suit, the sums of $90·46 and $78·71 having been previously paid and indorsed upon it. Wood had at that time mortgaged all his property to his other creditors for its full value.

Pitkin, in March, 1835, in the absence of Sexton, claimed that Sexton had obtained a title by virtue of the sheriff's sale, which had never been transferred to Wood, and offered to convey it to Wood and indorse its appraised value upon Wood's note if he would pay that value, but Wood declined. Pitkin then sold it to one Maynard for $380·44, and indorsed that sum on the note against Wood. Pitkin gave Maynard a warranty deed in his own name, of the property, subject to the mortgage to the Massachusetts Hospital Life Insurance Company. Maynard thereupon went into possession, Wood having been in possession until that time.

In September, 1835, the action of Sexton & Co. against Wood, which was founded solely upon his note, was tried, and the note was produced, having the three indorsements upon it, and a verdict was returned for $818·75, in favor of the plaintiffs. After the decision of the Court upon the points of law reserved in that case, (see 17 Pick. 110,) it became known that the title supposed to have been obtained by Sexton under the sheriff's sale, was invalid, for the reasons set forth in the declaration in the present action. Wood claimed and took possession of the land, and Sexton & Co. repaid Maynard the sum received from him. They also paid Wood $150, for the rent while Maynard had possession.

At the trial of the action of Sexton & Co. against Wood, it was contended by Wood, that his note to the plaintiffs was void, on the ground that they had agreed to convey to him the land in question, by a deed of warranty, except as against the Massachusetts Hospital Life Insurance Company, and that they had, without his knowledge, executed a quitclaim deed, which they had caused to be recorded, and which he had never consented to receive in satisfaction of the agreement; that the sale of the equity of redemption by the deputy sheriff, and his deed to Sexton, divested Wood of his title, and avoided his note, either in whole or to the amount of the value of the equity of redemption as estimated by the parties at the time of the contract; and that the indorsement upon Wood's note, of the proceeds of the sale of the land to Maynard, was made without Wood's knowledge; and Wood disclaimed all advantage from such indorsement as limiting the damages, in case the jury should find for the plaintiffs.

At the trial of the present action Wood testified, that the consideration for his agreement with Sexton & Co. was their agreement to convey the land, together with certain personal property which they transferred to him; that they agreed to give him a warranty deed, and that he had no knowledge of the making and recording of the quitclaim deed, until six months after it had been made and recorded, — when Sexton, in passing by his house, handed him the deed, without any explanation; that he never consented to receive it as a performance of the contract for the conveyance of the land, although he

Sexton
v.
Nevers.

never expressed any dissatisfaction, or called for any other deed, until the summer of 1834, when Sexton having removed from this part of the country, he, the witness, applied to Pitkin for a warranty deed, and Pitkin replied that he would not give him a warranty deed, but he would give him as many quitclaims as he desired.

Judgment was to be rendered for the plaintiff or for the defendant, as the Court should direct ; and if for the plaintiff for such sum as the Court should order.

*Sept. 24th.*    *Baker*, in support of the action, said that the plaintiff was the only person who had suffered by the neglect of the deputy sheriff, and that he was entitled to a remedy by an action of the case against the sheriff ; *Draper* v. *Arnold*, 12 Mass. R. 449 ; *Esty* v. *Chandler*, 7 Mass. R. 464 ; *Wellington* v. *Gale*, 13 Mass. R. 483 ; *Whitaker* v. *Sumner*, 9 Pick. 308 ; that Wood had had the benefit of the indorsement on the note, of the amount received from Maynard, and the plaintiff had lost the benefit of the title which was the consideration for that indorsement ; and that the amount of his damages was the sum of $380·44 so indorsed, the sum of $150 paid to Wood as rent, and the fees, $16·30, paid to the deputy sheriff and the register of deeds, with interest on these sums. *Rich* v. *Bell*, 16 Mass. R. 294 ; *Tyler* v. *Ulmer*, 12 Mass. R. 163 ; *Whitaker* v. *Sumner*, 9 Pick. 308 ; *Weld* v. *Bartlett*, 10 Mass. R. 270.

*Wells* and *Alvord*, for the defendant.

*Sept 29th.*    MORTON J. delivered the opinion of the Court. In levying an execution on an equity of redemption, the officer is bound to comply with all the regulations established by law, in relation to the notification, the mode of conducting the sale, the title to be given to the purchaser, and the return of his precept. These are official duties, for the neglect of which the delinquent is not only liable for himself, but the principal for his deputy. For a breach of these or other duties in the service of an execution, the officer is answerable to others injuriously affected by his conduct, as well as to the parties to the original judgment. Thus an action will lie in favor of other attaching creditors. *Rich et al.* v. *Bell*, 16 Mass. R. 294 ; *Whitaker* v. *Sumner*, 7 Pick. 551, and 9 Pick. 308. So it

will lie in favor of a purchaser. It is true that he may require the warranty of the officer, that the requirements of the law have been complied with ; but he is not bound to rely upon such warranty. It might, in many cases, prove an inadequate remedy.

It appears from the officer's return, that he posted notifications in two towns adjoining the place of sale, instead of two towns adjoining that in which the land lay. This was such an error as rendered the sale invalid. Nothing passed to the plaintiff by the sheriff's deed, and he may well maintain this action for any injury which he thereby sustained. The officer's blunder injured no one but the plaintiff. It was a direct wrong to him ; and he is entitled to a remuneration.

The only question of any difficulty, is the extent of the plaintiff's suffering. *Primâ facie*, the price paid would seem to be the proper measure of damages. The purchaser loses his land and the sum paid would not necessarily be exactly equivalent to the injury sustained. In some cases it might be too much, in others too little. In the case at bar the rule has no application.

The executions upon which the equity was sold, were the property of Pitkin and Sexton. Sexton bid just enough to cover the amount of the executions and the costs of the service. No money was paid, except for the fees. In cases where the equity is bought by the creditor, the sum bid is no certain criterion of the value of the property. Whether Sexton at this auction acted as the agent of the company, or not, does not distinctly appear. But the facts clearly show that he acted in pursuance of an agreement with Wood ; and that the whole object of the sale on the execution, and the purchase by the plaintiff, was to perfect Wood's title. Pitkin and Sexton having purchased the equity, which was at the time subject to several attachments, and having also procured assignments of the judgments which held these liens, conveyed the estate to Wood. All these parties fearing that there might be other attachments subsequent to the above and prior to the conveyance between them, agreed to sell the equity on the first executions, to guard against any such apprehended attachments. Sexton was to bid it off and then convey to Wood, who

had purchased of Pitkin and Sexton and given them his note for the amount of their demand upon the property, including the three executions which they had purchased. The whole proceeding was intended solely for the benefit of Wood. A special confidence was placed in Sexton by Wood. There seems too, to be sufficient evidence of this trust.

If Sexton had obtained a perfect title to the equity, he would have been bound by his agreement to transfer it to Wood. He could in no way have derived any benefit from it without a breach of trust. Subsequent events show that no such attachments as were apprehended, existed. Wood's title remained valid, and this precautionary measure proved to be unnecessary and entirely useless. No conveyance was made by Sexton subsequently to his purchase, and none could add any thing to the strength of Wood's title. No one, so far as the title to the estate was concerned, lost or gained any thing by the officer's mistake. The plaintiff therefore cannot recover any damage on this ground.

It is true that some time after the sale on execution, Pitkin and Sexton became doubtful of Wood's ability to pay the note which he had given ; and that Pitkin, in the absence of his partner, undertook to sell the equity, and did in fact convey the same to one Maynard for a certain sum, which he indorsed upon Wood's note. Since that time, upon the discovery that the sheriff's sale was defective and that Sexton acquired no title by it, the purchase money has been repaid. And the plaintiff now seeks to recover the amount in this action.

But this claim cannot be supported. The indorsement was made upon a partnership note, and this loss, if any has accrued, is the loss of the company and not of the plaintiff. But it is very clear that the partners could not recover for it. The conveyance of Pitkin could pass nothing. He had no title. But if Sexton had transferred his title to him it would make no difference. Wood needed no additional assurance of title ; and a conveyance to any one else would be in violation of the agreement between him and Sexton ; a breach of trust ; and entirely subversive of the object which all parties had in view, in making the sale on the executions. Pitkin and Sexton made the indorsement in their own wrong. If, by rea

son of their having recovered judgment on the note, the mistake cannot now be corrected, the loss must fall on those who committed the error.

The plaintiff paid the fees and other expenses of the levy of the execution to the defendant's deputy. These he has no right to retain. He was bound to execute the precept according to law. For this service he was entitled to the legal fees. For this the plaintiff paid him. In the apprehension that there might be an attachment on the property, the parties interested were willing to incur the expense of a levy, to guard against such a lien. But the officer, by his neglect of duty, deprived them of the benefit of the security which they sought And to allow him to retain compensation for services he never effectively performed, would be gross injustice.

Although in some things in relation to the service of the execution, it is apparent that the plaintiff acted for the company, yet it does not appear that the money was paid for the company, or for Wood. Neither had any such connexion with the transaction as will sustain an action. If the sheriff or his deputy be liable to any one, it must be to the plaintiff. He apparently bid for himself; he took the conveyance in his own name; he was personally liable to pay, and did in fact pay, the fees and expenses. And for these, with interest from the time of payment, he is now entitled to judgment.